# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CHASE BANK USA, N.A., et al., | ) | CASE NO.  1:08CV514 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| CITY OF CLEVELAND, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Plaintiffs, Chase Bank USA, N.A., JPMorgan Chase Bank, N.A., JPMorgan Mortgage Acquisition Corp., and J.P. Morgan Securities, Inc. (collectively "the Chase Plaintiffs"), brought this declaratory judgment and injunction action against Defendant City of Cleveland ("City"). The City has filed a motion to dismiss the Amended Complaint under Fed. R. Civ. P. 21(b)(1) for lack of subject matter jurisdiction. (Doc. No. 31.) The motion is briefed and ripe for decision.

**Background**

To fully understand the posture of the present case, it is necessary to review the procedural history of two related cases. On January 10, 2008, the City filed suit against various banks and lending institutions in the Cuyahoga County Court of Common Pleas. The action was removed to this Court on January 15, 2008. *See City of Cleveland vs. Deutsche Bank Trust Co., et al.*, Case No. 1:08CV139 (referred to hereafter as "the Federal Action.") It is undisputed that the Chase Plaintiffs were not originally parties to the Federal Action, but were added as defendants on or about October 8, 2008.

(*See* Federal Action, Doc. No. 189, Second Am. Compl.; Case No.1:08CV514, Doc. No. 29, Am. Compl. at ¶ 7.)

In the Federal Action, the City asserted a single public nuisance cause of action against the defendants. According to the City, subprime lending created a financial crisis in Cleveland that resulted in a high incident of foreclosure, leading to a decline in neighborhood property values, and an increase in abandoned properties and criminal activity. The Federal Action Defendants (including the Chase Plaintiffs), however, were not directly responsible for the issuance of the subprime loans. Rather, these institutions securitized the already issued subprime loans into mortgage-backed securities (MBS). The City sought to recover damages it claimed represented the cost of monitoring, maintaining, and demolishing foreclosed properties; and the diminution in the City's property tax revenues caused by the depreciating effect foreclosures have had on the affected homes and surrounding properties.

The Federal Action Defendants moved to dismiss on a variety of state and federal grounds (Federal Action, Doc. Nos. 197, 199, 202, 205, 207, 208, 209, 228.) On May 15, 2009, the Court issued its ruling granting the motions to dismiss on numerous state law grounds. (Doc. No. 247, Memo. Op. at 9.) Because the Court dismissed on state grounds, it did not reach the issue of federal preemption. On July 27, 2010, the Sixth Circuit issued a decision affirming this Court's ruling. *See City of Cleveland v. Ameriquest Mgt. Securities*, 2010 U.S. App. LEXIS 15305 (6th Cir. July 27, 2010). In affirming, the Sixth Circuit focused its attention solely on this Court's holding that the City was unable to set forth a claim for nuisance due to the fact that it could not establish

the necessary element of proximate cause. *Id*. at *23-26. Like this Court, the Sixth Circuit did not reach the issue of federal preemption.

Before this Court issued its ruling in the Federal Action, the Chase Plaintiffs filed, on February 28, 2008, the present declaratory judgment action (hereinafter referred to as the "Declaratory Judgment Action.") In the Amended Complaint, the Chase Plaintiffs seek declarations that Ohio law is preempted by the National Bank Act (NBA) and by regulations promulgated by the Office of the Comptroller of the Currency (OCC) as to securitizing activities, and the purchase of mortgage loans by non-bank entities—including the Chase Bank Defendants—from national banks.[1] They also seek declarations that the recovery of costs associated with the foreclosed properties and any claim under Ohio's Corrupt Activities Act are preempted by federal law. (Am. Compl., Prayer for Relief at ¶¶ A-D.)  In addition, as will be discussed in detail below, the Chase Plaintiffs seek preliminary and permanent injunctive relief.

On August 22, 2008, a third related action was filed in the Cuyahoga County Court of Common Pleas ("the State Action"). As was the case in the Federal Action, the City brought a cause of action for public nuisance, once again seeking the recovery of costs associated with the property foreclosures. In addition, the City also raised claims for damages under OHIO REV. CODE § 715.261, which allows for the recovery of costs associated with vacant structures, and Ohio's Corrupt Activities Act, OHIO REV. CODE § 2921.12(A).

---

[1] The Chase Plaintiffs allege that they bring the Declaratory Judgment Action under "the National Bank Act, the Supremacy Clause of the United States Constitution, and 42 U.S.C. § 1983." (Am. Compl. at ¶ 20.)

The issues of federal preemption and severance were raised in the State Action in a motion to dismiss. The state court ruled on the issue of severance, but reserved ruling on federal preemption. The state court subsequently stayed the State Action, pending a ruling from the Sixth Circuit in the Federal Action. (*See* Doc. No. 27.)

This Court had temporarily held the Declaratory Judgment Action in abeyance pending a ruling in the State Action. Upon the issuance of the stay in the State Action, the Court granted the Chase Plaintiffs leave to file an amended complaint. Following the filing of the amended pleading, the City moved for dismissal.

**Standard of Review**

Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. *Moir v. Greater Cleveland Regional Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990). *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990); *Smith v. Encore Credit Corp*., 623 F. Supp. 2d 910, 914 (N.D. Ohio 2008). A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to

hear the case. *Ritchie*, 15 F.3d at 598; *Moir*, 895 F.2d at 269. Here, the City is making a facial attack on the Chase Plaintiffs' Amended Complaint.

**Discussion**

In their Amended Complaint to the Declaratory Judgment Action, the Chase Plaintiffs allege that the "Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the Constitution and laws of the United States. In addition, jurisdiction is proper under 28 U.S.C. § 1343(a)(3), because [the City], under color of state law, seeks to deprive Plaintiffs of their federal constitutional rights." (Am. Compl. at ¶ 20.) In its motion to dismiss, the City argues that subject matter jurisdiction is found in neither § 1331 nor § 1343.

### No Federal Question Jurisdiction under 28 U.S.C. § 1331 when Seeking Declaratory Judgment on an Anticipated Defense

"The Declaratory Judgment Act does not create an independent basis for federal subject matter jurisdiction." *Heydon v. Mediaone of Southeast Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). *See Vaden v. Discover Bank*, 129 S. Ct. 1262, 1278, n.19 (2009); *Playa Marvel, P.M., S.A. v. LKS Acquisitions, Inc.*, 585 F.3d 279, 280 (6th Cir. 2009). Thus, to utilize the Declaratory Judgment Act, a plaintiff must demonstrate that the district court already has subject matter jurisdiction. *See Haydon*, 327 F.3d at 470.

Section 1331, the federal question jurisdictional statute, gives federal district courts original jurisdiction over "all civil actions arising under the Constitution,

laws, or treaties of the United States."[2] 28 U.S.C. § 1331. "[W]hether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)). "It is well settled that '[a] defense that raises a federal question is inadequate to confer federal jurisdiction.'" *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1236 (10th Cir. 2003) (quoting *Merrell Dow*, 478 U.S. at 808.) "Federal-question jurisdiction is not present 'even if the [federal] defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.'" *Id.* (quoting *Franchise Tax Bd.*, 463 U.S. at 14).

The provisions of the "well-pleaded complaint rule" are equally applicable in the context of a declaratory judgment action. As the court observed in *Penobscot Nation and Passamquoddy Tribe v. Georgia-Pacific Corp.*, 106 F. Supp. 2d 81, 82 (D. Maine 2000):

> The answer [that an anticipated defense cannot create jurisdiction] is the same if the defendant acts first and brings a declaratory judgment action in federal court seeking a declaration that its federal defense trumps the plaintiff's state law claim. Although the defendant has thereby become the plaintiff and ostensibly has pleaded a claim that is federal, there is still no federal jurisdiction.

---

[2] "[T]he 'arising under' gateway into federal court in fact has two distinct portals. The well-worn thoroughfare admits litigants whose causes of action are created by federal law, that is, where federal law provides a right to relief. […However,] in certain cases federal question jurisdiction will lie over state-law claims that 'implicate significant federal issues.'" *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (internal citation omitted) (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)). "Even under the *Grable* [two portal] standard, however, the federal issue must be raised by the initial claim, and not as an anticipated defense." *A.O. Sherman, LLC v. Bokina*, 2009 U.S. Dist. LEXIS 50326, at *6 (D. Conn. June 16, 2009*).*

*See also Vaden*, 129 S. Ct. at 1278, n.19 (quoting 10B Wright & Miller § 2758, pp. 519-521) ("The Declaratory Judgment Act was not intended to enable a party to obtain a change of tribunal from a state court to a federal court, and it is not the function of the federal declaratory action merely to anticipate a defense that otherwise could be presented in a state action.")

Turning to the Second Amended Complaint in the Federal Action and the Complaint in the State Action, both actions raise claims that sound solely in Ohio law. Federal preemption was interjected into both of these actions as a defense. Because this federal law issue would only come into play as an anticipated defense to the City's state law claims, it, alone, cannot confer subject matter jurisdiction under 28 U.S.C. § 1331. *See, e.g., Heydon*, 327 F.3d at 470 (declaratory judgment action seeking a determination that the Cable Act would bar defendants' trespass claim did not create subject matter jurisdiction); *Playa Marel*, 585 F.3d at 280 (declaratory judgment action seeking a ruling that a federal securities violation would defeat defendants' breach of contract claim did not confer jurisdiction); *Penobscot Nation*, 106 F. Supp. 2d at 83 (argument that federal law preempted a claim under Maine's Freedom of Access Act could not support federal jurisdiction).

### No Federal Subject Matter Jurisdiction under 28 U.S.C. § 1343 via the Supremacy Clause

The Chase Plaintiffs allege that the City's public nuisance action is preempted by the Supremacy Clause. (Am. Compl. at ¶ 44.) The City argues, however, that

the Supremacy Clause cannot confer jurisdiction under 28 U.S.C. § 1343(a)(3).[3] The Court agrees. "[A]n alleged violation of the Supremacy Clause 'does not, in itself, give rise to a claim 'secured by the Constitution' within the meaning of § 1343(3)." *Banas v. Dempsy*, 742 F.2d 277, 278 n.1 (6th Cir. 1984) (quoting *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 615 (1979) and 28 U.S.C. § 1343(a)(3)). *See Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107-08 (1989) ("[…the Supremacy Clause] is not a source of any federal rights […]."); *Western Air Lines, Inc. v. Port Auth. of N.Y & N.J.*, 817 F.2d 222, 225 (2d Cir. 1987) ("A claim under the Supremacy Clause that a federal law preempts a state regulation is distinct from a claim for enforcement of that federal law. The primary function of the Supremacy Clause is to define the relationship between state and federal law.") (internal citation omitted).

### Section 1983 and the National Bank Act

The Chase Plaintiffs, however, have underscored the fact that they rely not only on the Supremacy Clause, but also on 42 U.S.C. § 1983 and the National Bank Act[4] (NBA) for jurisdiction. (Doc. No. 34 at 8.) "While not a source of substantive rights, 42 U.S.C. § 1983 provides a remedy for the deprivation or unlawful violation 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Dorr v. City of Ecorse*,

---

[3] Section 1343(a) provides, in relevant part:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

*** 

    (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all person within the jurisdiction of the United States […].

[4] Specifically, the Chase Plaintiffs cite 12 U.S.C. §§24 (Seventh), 85, and 371 of the NBA. (Am. Compl. at ¶ 44.)

8

305 Fed. App'x 270, 274 (6th Cir. 2008) (citing 42 U.S.C. § 1983). Because § 1983 does not create any federally protected rights, *Albright v. Oliver*, 510 U.S. 266, 271 (1994), courts must look to other federal statutes to determine whether there exists a cognizable claim under § 1983.

Courts employ a three-party inquiry to determine whether a particular statute creates a right enforceable under § 1983: (1) whether the plaintiff is the intended beneficiary of the statute; (2) whether the plaintiff's interests are not so "vague and amorphous that its enforcement would strain judicial competence;" and (3) whether the statute clearly imposes a binding obligation on the states. *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (internal citation omitted); *Levin v. Childers*, 101 F.3d 44, 47 (6th Cir. 1996). In *Gonzaga Univ. v. Doe*, the Supreme Court clarified this test by emphasizing that "it is *rights*, not the broader or vaguer 'benefits' or 'interests' that may be enforced under the authority of [§ 1983]." 536 U.S. 273, 283 (2002) (emphasis in original). *See Johnson v. City of Detroit*, 446 F.3d 614, 620-21 (6th Cir. 2006). *See, e.g., Caswell v. City of Detroit Hous. Comm'n*, 418 F.3d 615, 618-20 (6th Cir. 2005). "Accordingly, where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga*, 536 U.S. at 286.

Only a handful of cases have considered whether the NBA creates rights enforceable by banks and lending institutions under § 1983. In *Wachovia Bank, N.A. v. Burke*, the Second Circuit, applying the *Blessing* factors, determined that §§ 24 (Seventh), 85, and 371 "did not provide national banks with rights enforceable under § 1983." 414 F.3d 305, 322 (2d Cir. 2005). Looking to the statutory scheme of the NBA, the court found

9

that, "[w]hen viewed as a whole in light of its history, it is plain that the NBA addresses the allocation of federal versus state regulatory power and does not provide national banks with rights enforceable under § 1983." *Id.* According to the court, while § 484 focuses on national banks, "the structure and history of the provisions indicate that Congress did not intend to provide national banks with individual rights as private entities." *Id.* Rather, "[i]t has long been held that 'national banks are instrumentalities of the Federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States." *Id.* (quoting *Davis v. Elmira Sav. Bank*, 161 U.S. 275, 283 (1986)). Accordingly, the court reasoned that "Congress created national banks as instruments to foster a national banking system," and "'when congressional pre-emption benefits particular parties only as an incident of the federal scheme of regulation, a private damages remedy under § 1983 may not be available.'" *Id.* at 323 (quoting *Golden State*, 493 U.S. at 109). Other courts that have considered the issue have also concluded that the NBA did not confer upon federal banks a private cause of action under § 1983.[5] *See, e.g., Capital One Bank (USA), N.A. v. McGraw*, 563 F. Supp. 2d 613, 630 (S.D. Va. 2008) (no private cause of action for banks under the NBA via § 1983); *Wachovia Bank, N.A. v. Watters*, 334 F. Supp. 2d 957, 966 (W.D. Mich. 2004) (same).

---

[5] The Chase Plaintiffs cite *Ass'n of Banks in Ins. v. Duryee,* 270 F.3d 397, 401 (6th Cir. 2001) (national banks sought declaratory and injunctive relief to block the application of certain Ohio insurance licensing provisions against them), as support for the notion that the NBA does confer a right in national banks to be free from state regulation. However, the banks actually brought suit under the Federal Reserve Act, 12 U.S.C. § 92, and not the NBA. Moreover, the Sixth Circuit never addressed the issue of subject matter jurisdiction or the rights of banks under the NBA
.

*Conclusion*

The Court finds this authority persuasive and likewise holds that the National Bank Act does not confer a private cause of action under § 1983 for national banks and lending institutions. Thus, the Chase Plaintiffs' request for declaratory relief, alone, cannot support a finding of subject matter jurisdiction under either 28 U.S.C. § 1331 or § 1343.

### The Availability of Federal Jurisdiction for Requests for Injunctive Relief

The Chase Plaintiffs argue that even if federal jurisdiction is not available for their declaratory judgment claims, their request for an injunction provides the necessary subject matter jurisdiction. In the relevant portion of the prayer for relief, the Chase Plaintiffs request that the Court:

> Enter a permanent injunction enjoining Cleveland and its agents from pursuing and maintaining the Federal Action and the State Action against the JPMorgan Banking Institutions (including the Chase Bank and/or JPMorgan Bank operating subsidiaries and affiliates engaging in lending, securitization and related activities or that purchase loans from national banks, thrifts, or their operating subsidiaries); from taking any other action to prevent or interfere, either directly or indirectly, with the JPMorgan Banking Institutions' (including other Chase Bank and/or JPMorgan Bank operating subsidiaries or affiliates) real-estate mortgage lending and securitization activities in Ohio (including taking any actions to penalize or compel the payment of money by the JPMorgan Banking Institutions and/or their operating subsidiaries)[.]

(Am. Compl., Prayer for Relief at ¶ E.) The Chase Plaintiffs also sought preliminary injunctive relief, but never filed a motion for a preliminary injunction. (*Id.* at ¶ F.)

The Supreme Court has held that "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus

11

presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983). *See, e.g., Verizon Md. Inc. v. P.S.C.*, 535 U.S. 635, 642 (2002) (federal jurisdiction for claim to enjoin a state agency's determination that local exchange carrier was required to pay reciprocal compensation for calls to Internet service providers); *Adrian Energy Assoc. v. Mich. P.S.C.*, 481 F.3d 414, 420-21 (6th Cir. 2007) (in declaratory judgment action, request to enjoin the enforcement of an order of the state agency concerning certain power purchase agreements supported a finding of federal jurisdiction).

In *Cedar Rapids Cellular Telephone, L.P. v. Miller*, cellular phone companies brought suit against Iowa's Attorney General, seeking a declaration that the Federal Communications Act preempted the application of Iowa's Consumer Credit Code to charges assessed to the phone companies' customers and an injunction to block the Attorney General's enforcement of the state consumer protection statutes. In reversing the district court's dismissal for want of subject matter jurisdiction, the court found that "[t]he District Court's reasoning might have had force if the appellants were only seeking a declaratory judgment. However, because the applicants are also seeking injunctive relief on their preemption claims, the district court has jurisdiction to hear them." 280 F.3d 874, 878 (8th Cir. 2002) (citing *Shaw*, 334 U.S. at 248) (internal citation omitted).

Like the plaintiffs in *Cedar Rapids*, the Chase Plaintiffs maintain that their action is not one limited to a request for declaratory relief, but, rather, is also an action for an injunction blocking certain state regulation. They insist that this fact places their action squarely in line with the decisions in *Shaw* and *Verizon*. The City challenges this characterization, noting that the cases relied upon by the Chase Plaintiffs "all involve

claims to enjoin state officials from acting in violation of federal law in a manner that did not involve the assertion of state-law claims." (Doc. No. 36 at 3.) It continues that "[t]he federal question, in other words, did not 'arise only as a defense to an action brought under state law' but instead concerned some other type of conduct by a state official." (*Id.*) Instead, the City directs the Court to authority finding no jurisdiction for declaratory judgment actions involving federal defenses to state claims, even where injunctive relief is also sought.[6]

Neither the cases cited by the Chase Plaintiffs, nor those relied upon by the City, directly address the issue before this Court. The City's cases are limited to situations involving private parties. The cases relied upon by the Chase Plaintiffs involve, as the City observes, regulatory conduct by state officials. Here, there is no separate action being pursued by an official acting under color of law. There is no official order, agency ruling, or the like that is the subject of the request for injunctive relief. Rather, the prayer specifically seeks to enjoin the City from maintaining the Federal and State Actions. (Am. Compl., Prayer for Relief at ¶ E.)

Nonetheless, this Court has previously determined that the City's conduct in bringing the nuisance claim in the Federal Action constituted "regulation" in a "governmental" capacity versus a "propriety" capacity. (Federal Action, Doc. No. 247, Mem. Op. at 7.) Thus, the City cannot be treated as a private citizen pursuing its legal

---

[6] Specifically, the City cites the following cases: *Heydon*, *supra* (land owners requested declaratory and injunctive relief blocking cable company's access to their property); *Nicodemus, supra* (land owners sought declaratory and injunctive relief in connection with a railroad's rights under various federal land-grant statutes); *Penobscot Nation*, *supra* (Indian tribes sought declaratory and injunctive relief, on the ground of federal preemption, from paper companies' potential state law claims to compel production of certain documents).

rights through litigation, and this case is, therefore, distinguishable from the City's cases involving only private parties. Still, the "regulation" pursued by the City, indeed, the only regulation that appears to be available to the City, is the filing of a lawsuit for damages. In this respect, the request to enjoin the pending lawsuits is materially indistinguishable from the request for a declaration that the nuisance claims in these lawsuits are preempted by federal law. The question then becomes whether the attempt to enjoin the pending state and federal lawsuits can provide a sufficient foundation for a finding of subject matter jurisdiction.

The Sixth Circuit was faced with a somewhat analogous situation in *Ammex v. Cox*, 351 F.3d 697 (6th Cir. 2003). There, the owners of a duty-free shop at the border between Canada and the United States in Detroit, Michigan, sought an injunction to prevent the State's Attorney General from enforcing, by means of an enforcement action, his determination that the shop's advertising violated the Michigan Consumer Protection Act (MCPA). Relying on *Shaw* and *Verizon*, the court found the existence of subject matter jurisdiction, noting that "federal jurisdiction extends to suits to enjoin the state officials from enforcing a state regulation against the person on the ground that the regulation violates federal rights." *Id.* at 702-03. As to the similarity of such an action to one seeking a declaration that the government official's ruling is erroneous, the court observed that:

> Subject matter jurisdiction exists [in an injunction action seeking to block governmental regulation on the ground of federal preemption] despite the fact that if one were to examine closely the nature of the complaint in such a case, the asserted preemption claim would often be remarkably similar to an anticipation of a federal defense through a declaratory action, which generally does not create subject matter jurisdiction under the well-pleaded complaint rule.

14

*Id.* at 704.

The Court questions whether the Supreme Court intended the rulings in *Shaw* and *Verizon* to supply subject matter jurisdiction for a request for injunctive relief that would otherwise not be allowed in federal court as a declaratory judgment action. Still, this Court is bound by the Sixth Circuit's ruling and, in like fashion, finds that the request to enjoin the City from pursing its regulatory conduct through the pending litigation supplies the necessary subject matter jurisdiction to maintain this action in federal court.[7]

### No Irreparable Harm to Support an Injunction of the Pending Litigation

While the Court has subject matter jurisdiction over the request to enjoin the pending lawsuits, the Court finds that the Chase Plaintiffs' cannot, at this time, satisfy the requirements for an injunction because they cannot demonstrate the existence of irreparable harm. A plaintiff seeking a preliminary injunction must establish: (1) a strong likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable harm without the relief requested; (3) that the threatened injury outweighs any damage that the injunction may cause to others; and (4) that the injunction will serve the public interest. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 1998). The standard for a permanent injunction is "essentially the same" as the standard for a preliminary

---

[7] The Court acknowledges that courts in other jurisdictions have found subject matter jurisdiction is lacking "when the injunctive relief sought in reality does no more than effectuate the declararatory judgment by preventing the application of state law […]," and jurisdiction would not lie for the declaratory action. *See, e.g. Playboy Enters, Inc. v. P.S.C.*, 906 F.2d 25, 30 n.7 (1st Cir. 1990)*; Penobscot Nation*, 106 F. Supp. 2d at n. 4. However, as noted earlier, this Court is bound to follow the Sixth Circuit precedent in *Ammex, supra.*

injunction with the exception that a plaintiff must demonstrate actual success on the merits rather than a mere likelihood of success.[8] *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12 (1987).

> While no one factor is dispositive, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959). *See Sampson v. Murray*, 415 U.S. 61, 88 (1974). "Thus, if the movant makes no showing of irreparable injury, 'that alone is sufficient' for a district court to refuse to grant []injunctive relief." *Sociedad Anonima Vina Santa Rita v. United States Dept. of the Treasury*, 193 F. Supp. 2d 6, 14 (D.D.C. 2001) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)).

> Irreparable harm means more than substantial harm. *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 771 (E.D. Mich. 2003). It describes a harm that is both certain and great; it must be actual and not theoretical. *Wisconsin Gas Co. v. Federal Energy Regulatory Com.*, 758 F.2d 669, 674 (D.C. Cir. 1985). The threatened harm must be by "some injury for which there exists no adequate legal remedy such as monetary damages." *Leach v. Ford Motor Co.*, 299 F. Supp. 2d 763, 774 (E.D. Mich. 2004). Further, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a

---

[8] In considering whether an injunction is warranted, it is important to keep in mind that an injunction is an extraordinary remedy, which does not issue "as of course" or for "trifling" injuries. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982). *See Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

claim of irreparable harm." *Wisconsin Gas Co.*, 758 F.2d at 674 (internal citation omitted).

### Enjoining the Pending Litigation

At this point, the Chase Plaintiffs have a determination in their favor (albeit on reasons other than federal preemption) in the Federal Action, which has been affirmed by the Sixth Circuit. Should the City seek further review and the United States Supreme Court accepts certiorari and, ultimately, returns the action for further review, the Chase Plaintiffs would have an opportunity to raise federal preemption, again, in defense of the Federal Action.

As for the State Action, it was temporarily stayed pending a ruling from the Sixth Circuit. Now that the Sixth Circuit has ruled, it is likely that the State Action will be reinstated, and the Chase Plaintiffs will have an opportunity to, once again, raise the issue of federal preemption there, as well.[9] As such, the Chase Plaintiffs have two adequate fora in which to raise their issue, and cannot, at this time, demonstrate irreparable harm from a failure of this Court to grant injunctive relief.[10] *See Wisconsin Gas Co.*, 758 F.2d at 674. Their desire to have the issue resolved in this forum, alone, does not support the award of the extraordinary remedy of injunction. *See generally Cenergy Corp. v. Bryson Oil & Gas P.L.C.*, 657 F. Supp. 867, 872 (D. Nev. 1987) ("[t]he

---

[9] The Court is aware that two of the Chase Plaintiffs, Chase Bank USA, N.A., and JP Morgan Acquisitions Corp., are not parties to the State Action. However, the Chase Plaintiffs have not suggested that the interests of the named parties, JPMorgan Chase Bank, N.A. and JP Morgan Securities, Inc., are not aligned with these non-parties. Nor is there any indication that the sued parties are incapable of adequately raising the federal preemption issue, which they have already briefed in the State Action.

[10] The Chase Plaintiffs make much of the fact that they were not parties to the Federal Action when they filed the present Declaratory Judgment Action. While this is true, it is undisputed that they are parties now, and will have the opportunity, if necessary, to raise the federal preemption argument in that forum.

mere possibility that one might be sued somewhere other than in a forum of one's choice does not give rise to irreparable harm.")

*Enjoining "Other Action"*

The Chase Plaintiffs' request for injunctive relief is not limited to enjoining the pending litigation. Rather, they also look to prevent the City from "taking any other action" to interfere with their securitizing of loans. (Am. Compl., Prayer for Relief at ¶ F.) The City has not, of yet, taken any such "other action."

"The jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies, therefore federal courts are not permitted to render advisory opinions." *Adcock v. Firestone and Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987). "Ripeness requires that the 'injury in fact be certainly impending.'" *Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson*, 274 F.3d 377, 399 (6th Cir. 2001). The doctrine exists "to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities." *Dixie Fuel Co. v. Comm'r of Soc. Sec.*, 171 F.3d 1052, 1057 (6th Cir. 1999). District courts must dismiss claims that are not ripe. *Eaton v. Charter Twp. of Emmett*, 317 Fed. App'x 444, 449 (6th Cir. 2002).

As the above discussion demonstrates, the Chase Plaintiffs' request to enjoin the pending lawsuits is not yet ripe, and must be dismissed without prejudice. *See, e.g., Ammex*, 361 F.3d at 710. As for the "other action" the Chase Plaintiffs fear the City could possibly take in the future, it is not fleshed out in the Amended Complaint, and the Court questions what other action the City could possibly take with respect to the issuance of loans and the sale of securities within the State of Ohio. Indeed, in light of the

18

fact that OHIO REV. CODE § 1.63 reserves to the State the sole authority to regulate the business of loans, the Court cannot conceive any possible way in which the City could take other action to regulate the Chase Plaintiffs' business activities. Nonetheless, in an abundance of caution, the Court shall dismiss this portion of the Amended Complaint without prejudice, as well.

**Conclusion**

The City's motion to dismiss is **GRANTED**, in part, and **DENIED**, in part. For the reasons set forth above, the Chase Plaintiffs' action is **DISMISSED** without prejudice.

**IT IS SO ORDERED**.

Dated: August 5, 2010

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**